UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CURTIS L. BING,

    **Plaintiff,**

                                Civil Action 2:18-cv-486
                                Chief Judge Edmund A. Sargus, Jr.
    v.                            Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Curtis L. Bing ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Response in Opposition (ECF No. 20), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff filed his application disability insurance benefits and supplemental security income on December 10, 2013. In his applications, Plaintiff alleged a disability onset of January 1, 2012. Plaintiff's applications were denied initially on April 16, 2014, and upon reconsideration on September 2, 2014. Plaintiff sought a hearing before an administrative law

judge. Administrative Law Judge Robert W. Flynn (the "ALJ") held a hearing on June 16, 2016, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Mischa Dowd (the "VE"), also appeared and testified at the hearing. On November 25, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On September 29, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff advances a sole contention of error, that the ALJ erred in assessing Plaintiff's subjective symptoms of pain. More specifically, Plaintiff asserts that the ALJ failed to offer sufficient bases for rejecting the limitations Plaintiff endorsed. According to Plaintiff, the ALJ failed to offer any explanation "beyond providing a summary of the medical evidence that does not create an obvious link to [the ALJ's credibility] finding." (Pl.'s Statement of Errors 6, ECF No. 16.) Plaintiff adds that the ALJ's "analysis entirely failed to address the most important reason [Plaintiff] gave for being unable to work—his inability to focus on tasks and sustain work due to chronic pain from his severe impairments." (*Id*. at 7.)

In her Memorandum in Opposition, the Commissioner disputes Plaintiff's assertions and instead maintains that the ALJ reasonably evaluated Plaintiff's allegations in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p. According to the Commissioner, the ALJ properly considered Plaintiff's treatment records, objective testing results, Plaintiff's activities of daily living, his work history, inconsistencies in Plaintiff's statements about his limitations, his medications, a doctor's observation that Plaintiff had symptom magnification with all activities, and the opinion evidence.

2

## II. HEARING TESTIMONY

At the hearing, Plaintiff testified that he his unable to work because of pain and because his legs "can drop out" causing him to "hit the ground at any time." (R. at 76.) He described his pain as typically being between six-to-eight on a ten-point scale. Plaintiff said he takes Flexeril for his pain and Adderall for his attention deficit disorder and that although he does not have any side effects from this medication, no medication works for his pain. Plaintiff testified that the most he could stand was 10 minutes, the furthest he could walk was 200 yards, and the longest he could sit was "just a few—five, 10, 15 minutes at the most, half an hour possibly if I really push it . . . ." (R. at 80-81.) Plaintiff added that the most he could lift would be about 8 pounds.

Plaintiff also stated that he did not think he could work because it is hard for him to get along with people because of the pain he is in. He added that it is hard for him to remain focused on anything. He indicated that he does have friends with whom he socializes, drinks beers, or watches movies. Plaintiff also said that he gets along with most of his neighbors.

Plaintiff testified that he tries to help out with chores, but cannot stand and do the dishes or bend over to pull laundry out of the washer. He said he last did yard work two-and-a-half or three years ago, when he would weed-eat or mow. Plaintiff indicated that he last cut and baled hay the summer after he stopped working.

Plaintiff testified that he is able to drive, but only for a "short time" because his leg goes numb. (R. at 74.) He later testified, however, that in the past two years, he had driven to both Colorado and Texas, but that he needed to stop every one or two hours to walk, stretch, and move. (R. at 88-89.) On the trip to Texas, his mom and nephew were with him, but his

nephew was too young to drive and he did not trust his mom on the interstate highways. Plaintiff indicated that he had taken turns driving with his wife on the trip to Colorado, which they had just taken two weeks prior. He added that the driving took two days each way and that they went on the trip as an early anniversary present and visited Plaintiff's cousin while there. (R. at 89.) Plaintiff stated that he and his wife go out to eat maybe once per month. Plaintiff stated that he likes to hunt and fish and that he last fished for one or two hours last year, but that it is hard to fish because of the standing. He indicated that he does, however, continue to hunt deer and turkey on their property, but that he uses a ground blind so that he does not have to climb into a deer stand.

On cross-examination from his attorney, Plaintiff indicates that for pain relief, he will lie down about two hours a day, and if his pain gets really bad, he will take Tylenol.

The VE testified that a hypothetical individual with Plaintiff's vocational profile and the residual functional capacity ("RFC") the ALJ ultimately assessed could not perform Plaintiff's past work, but could perform several other jobs that exist in significant numbers in the regional economy. Representative jobs included light cleaner, price marker, and photocopying machine operator.

### III. THE ADMINISTRATIVE DECISION

On November 25, 2016, the ALJ issued his decision. (R. at 36-49.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2016. (*Id*. at 38.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

4

engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the cervical and lumbar spines, sciatica, degenerative joint disease, scoliosis, an adjustment disorder with depression and anxiety, a personality disorder, and attention deficit hyperactivity disorder (ADHD)." (*Id.*) He further found that Plaintiff had the non-severe impairments of acute pancreatitis that was alcohol induced and deep venous thrombosis in November 2015 that was thought to be attributable to prolonged immobility while sitting in a deer stand. (R. at 39.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 39-40.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

---

Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

>CFR 404.1567(b) and 416.967(b) except: lift up to 20 pounds occasionally and frequently lift or carry 10 pounds; stand/walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; occasionally push/pull within the lifting restrictions; occasionally operate foot controls, balance, stoop, crouch, kneel, and crawl; never climb ladders, ropes, or scaffolds, but occasional climb ramps and stairs; frequently reach, including overhead, frequently handle (grasp, hold, turn objects); frequently finger (pick, pinch small objects); frequently feel (use fingertips to feel size, shape, texture, or temperature). In addition, he must avoid all exposure to unprotected heights and unprotected sharp objects, and must avoid all use of moving machinery. He must avoid concentrated exposure to wetness and humidity. Furthermore, the claimant is limited to work that involves simple, routine, and repetitive 1-2 step tasks; performed in a low stress environment, defined as free of fast-paced production requirements, involves only simple work-related decisions, has no workplace changes; has occasional and infrequent interaction with coworkers, has no interaction with the general public, and has occasional and infrequent interactions with supervisors with no close over-the-shoulder supervision.

(R. at 41.) In calculating Plaintiff's RFC, the ALJ considered Plaintiff's credibility and found that his allegations regarding his symptoms and limitations were not generally supported by or consistent with the objective evidence in the record and his activities of daily living.

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform his past work, he can perform jobs that exist in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act.

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, in his sole contention of error, Plaintiff challenges the ALJ's evaluation of his alleged limitations. The undersigned finds Plaintiff's sole contention of error to be without merit.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's

statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011),

9

*adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, the ALJ's analysis amply supplies substantial evidence supporting his credibility finding and properly considers the requisite factors in evaluating Plaintiff's alleged limitations.

With respect to Plaintiff's alleged physical limitations, the ALJ included a lengthy and thorough discussion of the record evidence, including the objective medical findings and observations by treating and examining medical sources. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). In particular, the ALJ discussed the results of MRIs Plaintiff underwent years prior to his alleged onset, as well as a July 2012 MRI, which reflected only mild and moderate findings; a 2013 EMG reflecting normal results; a May 2014 MRI reflecting only slight narrowing at C4-C6; a September 2015 CT scan showing degenerative disc disease; a June 2016 CT showing moderate stenosis; and a June 2016 x-ray of Plaintiff's pelvis reflecting normal findings. The ALJ also noted numerous examinations throughout the relevant time period in which Plaintiff displayed normal gait and station, as well as other grossly normal or only mild findings, including a June 2016 examination reflecting normal results. (R. at 39, 40, 42-44.)

With respect to Plaintiff's alleged nonexertional limitations, the ALJ discussed Plaintiff's mental health treatment records and pointed out that Plaintiff's mood and affect were observed to be stable and appropriate and that his focus and sleep were reported to be good throughout the majority of the relevant period, with the exception of a short period in which Plaintiff took Lexapro for depression and occasionally took Seroquel in order to sleep. The ALJ noted that Plaintiff reported in January through June 2016 that he had not been nervous, and his focus was

good following an increase in his Adderall.

In addition to considering Plaintiff's objective testing results, the observations of treating and examining sources, and the effectiveness of the medications Plaintiff took, the ALJ also reasonably discounted Plaintiff's allegations based upon the record evidence reflecting Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). For example, the ALJ pointed out that in contrast to Plaintiff's testimony that he can only drive short distances or sit for "half an hour if [he] really push[es] it," (R. at 80-81), the record reflected that Plaintiff continued to hunt turkeys and deer, harvest hay, work in a barn, and drive to and from both Texas and Colorado *after* the alleged onset date. (R. at 40, 45-46); *see also* (R. at 466-67, 472-73, 476, 492, 495, Mental Health Treatment Records from 2013-2014 (plaintiff reported getting his hay harvested, "hunting a lot," "working [and] hunting," that he had "to keep working no matter what," that he "[h]as been hunting," that he "[h]as been turkey hunting," that he is "keeping busy around the house," and that he "killed a doe recently").) The ALJ also pointed out that although Plaintiff testified that he hunted from a ground blind so he did not have to climb, Plaintiff sustained a clot in November 2015 that was attributable to prolonged sitting in a deer stand. In addition, the ALJ considered that Plaintiff reported to Dr. Sarver that his "activities revolved around helping with the cooking, dishes, and shopping" and that Dr. Sarver observed that Plaintiff "appeared to do his portion of the chores adequately and independently." (R. at 45 (citing R. at 359).)

The ALJ also noted Plaintiff's poor work history and that an examiner opined that Plaintiff appeared to magnify his symptoms. (R. at 46 (citing December 2014 Physical Therapy Examination Notes, R. at 660-61 (Plaintiff presented with complaints of pain after "shoveling dirt with an uneven stance" and "does appear to magnify symptoms")).)

Finally, the ALJ relied upon and assigned "great weight" to the opinion of Plaintiff's treating psychiatrist reflected on the form "Mental Assessment of Ability to do Work-Related Activities" he completed, wherein he opined that Plaintiff had only slight or only moderate limitations. Significantly, the ALJ noted that the nonexertional RFC determination he assessed accommodated Plaintiff's treating psychiatrist's opinions.

In summary, the undersigned finds that the ALJ explained in great detail the bases for his credibility assessment and his conclusion that Plaintiff's subjective complaints were inconsistent with his activities of daily living and other evidence in the record. Because substantial evidence supports the ALJ's credibility assessment, it is **RECOMMENDED** that Plaintiff's sole contention of error be **OVERRULED**.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE